**SWERDLOW FLORENCE SANCHEZ SWERDLOW & WIMMER**
**A LAW CORPORATION**
David A. Wimmer (SBN #155792)
    Email: dwimmer@swerdlowlaw.com
Lori M. Yankelevits (SBN #156253)
    Email: lyankelevits@swerdlowlaw.com
9401 Wilshire Blvd., Suite 828
Beverly Hills, California 90212
Telephone: (310) 288-3980
Facsimile: (310) 273-8680

**MCGUIREWOODS LLP**
Matthew C. Kane (SBN #171829)
    Email: mkane@mcguirewoods.com
Sylvia J. Kim (SBN #258363)
    Email: skim@mcguirewoods.com
Sean M. Sullivan (SBN #286368)
    Email: ssullivan@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: (310) 315.8200
Facsimile: (310) 315.8210

Attorneys for Defendant
MCLANE FOODSERVICE, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN TITUS,<br><br>Plaintiff,<br><br>vs.<br><br>MCLANE FOODSERVICE, INC., a corporation; and DOES 1-100, inclusive,<br><br>Defendant. | CASE NO. 2:16-cv-00635-KJM-EFB<br><br>**DEFENDANT MCLANE FOODSERVICE, INC.'S MOTION TO DISMISS OR STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND/OR 12(f):**<br><br>**(1) NOTICE OF MOTION**<br><br>**(2) REQUEST FOR JUDICIAL NOTICE**<br><br>**(3) MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed Under Separate Cover:*<br><br>**(4) [PROPOSED] ORDER**<br><br>Date:     **May 18, 2016**<br>Time     **1:30 p.m.**<br>Courtroom: **3, 15th Floor**<br>Judge:    **Hon. Kimberly J. Mueller** |

76554673.3

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

NOTICE OF MOTION ................................................................................................ iv

REQUEST FOR JUDICIAL NOTICE ...................................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.    INTRODUCTION............................................................................................ 1

II.   STATEMENT OF FACTS................................................................................ 2

III.  LEGAL ARGUMENT ...................................................................................... 2

    A.    APPLICABLE LEGAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6) AND 12(f) ........... 2

    B.    PLAINTIFF'S CLAIMS AND ALLEGATIONS SEEKING DAMAGES AND CIVIL PENALTIES IN CONNECTION WITH HIS FIFTH CAUSE OF ACTION MUST BE DISMISSED OR STRICKEN ................................................................................. 3

        1.    There Is No Private Right Of Action For Violations Of Section 246(h) ............................................................................................ 3

        2.    Plaintiff's Remedies For Violations Of Section 246(h) Are Limited To Only Equitable Or Restitutionary Relief ................................. 5

        3.    Penalties Under Cal. Lab. Code § 226 Are Not Available For Violations Of Section 246(h) .................................................. 6

IV.   CONCLUSION .................................................................................................. 7

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1990)............................................................................3

*Bassett v. Ruggles*,
2009 WL 2982895 (E.D. Cal. Sept. 14, 2009) ...................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................5

*Bureerong v. Uvawas*,
922 F.Supp. 1450 (C.D. Cal. 1996) ...................................................................3

*CSL, L.L.C. v. Imperial Bldg. Products, Inc.*,
2004 WL 2647701 (N.D. Cal. Mar. 22, 2004) ...................................................3

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)..............................................................................6

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993)............................................................................3

*Gilbert v. Eli Lilly & Co., Inc.*,
56 F.R.D. 116 (D.P.R. 1972) .............................................................................3

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999)............................................................................6

*Jeske v. Maxim Healthcare Servs., Inc.*,
2012 WL 78242 (E.D. Cal. Jan. 10, 2012) .........................................................4

*Johnson v. Hewlett-Packard Co.*,
809 F.Supp.2d 1114 (N.D. Cal. 2011) ...............................................................4

*Lewis v. Casey*,
518 U.S. 343 (1996) ..........................................................................................6

*Morgan v. Napolitano*,
2010 WL 3749260 (E.D. Cal. Sep. 23, 2010) .....................................................5

*Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880 (9th Cir. 1983)..............................................................................3

*Singleton v. Univ. of California*,
1995 WL 16978 (N.D. Cal. Jan. 6, 1995) ...........................................................3

**DEFENDANT MCLANE FOODSERVICE, INC.'S MOTION TO DISMISS OR STRIKE PLAINTIFF'S
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND/OR 12(f)**

*Tapley v. Lockwood Green Engineers, Inc.,*
    502 F.2d 559 (8th Cir.1974) ....................................................................................3

*TJRK, Inc. v. Waage,*
    2008 WL 4748179 (S.D. Cal. Oct. 27, 2008) ............................................................3

*Woo v. Home Loan Group, L.P.,*
    2007 WL 6624925 (S.D. Cal. July 27, 2007) ...........................................................5

**CALIFORNIA STATUTES**

Cal. Gov't Code § 12940 ...............................................................................................2

Cal. Lab. Code § 226 ........................................................................................1, 2, 4, 6, 7

Cal. Lab. Code § 246(h) ...........................................................................1, 2, 3, 4, 5, 6, 7

Cal. Lab. Code § 248.5 ...............................................................................................1, 2

Cal. Lab. Code § 248.5(e) .......................................................................................1, 4, 5, 7

Cal. Lab. Code § 248.5(h) ...............................................................................................7

Cal. Lab. Code § 2699(f) ...........................................................................................1, 2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ....................................................................................................5

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2, 3

Fed. R. Civ. P. 12(f) ....................................................................................................2, 3

**DEFENDANT MCLANE FOODSERVICE, INC.'S MOTION TO DISMISS OR STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND/OR 12(f)**

# NOTICE OF MOTION

**TO PLAINTIFF JUSTIN TITUS AND HIS ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on May 18, 2016, at 1:30 a.m., in Courtroom 3 of the United States District Court, Eastern District of California, located at 501 I Street, Sacramento, CA 92814, Defendant McLane Foodservice, Inc. ("Defendant" or "MFS") will and hereby does move the Court to dismiss or strike Plaintiff Justin Titus' ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(f) on the grounds that Plaintiff's claims for civil penalties and other monetary and injunctive relief in connection with his Fifth Cause of Action for Failure to Provide Notice of Paid Sick Leave in violation of Cal. Labor Code § 246(h) ("Section 246(h)") should be dismissed or stricken because such relief is unavailable to Plaintiff as a matter of law.

MFS further moves to strike from the Complaint the following allegations pursuant to Fed. R. Civ. P. 12(f) on the grounds that they are immaterial, impertinent and/or fail to state a claim upon which relief can be granted:

- The allegations in Paragraphs 14-16 of the Complaint regarding civil penalties that are recoverable under Cal. Lab. Code § 2699(f), in their entirety;

- The allegations in Paragraph 18 of the Complaint regarding Plaintiff's request to "recover penalties against Defendants";

- The allegations in Paragraph 61 of the Complaint regarding Plaintiff's request for damages and civil penalties: "Wherefore, Titus and the other current and former employees have been damaged as set forth above"; "civil penalties";

- Plaintiff's request for "compensatory, special, and general damages, including lost wages and related benefits" in Paragraph 1 of the Prayer for Relief pertaining to Plaintiff's Fifth Cause of Action;

- Plaintiff's request for "civil and statutory penalties, including those available under Labor Code sections 226, 248.5, and 2699(f)" in Paragraph 2 of the Prayer for Relief pertaining to Plaintiff's Fifth Cause of Action; and

- Plaintiff's request for injunctive relief in Paragraph 3 of the Prayer for Relief pertaining to Plaintiff's Fifth Cause of Action.

This Motion is based on this Notice, the attached Request for Judicial Notice and Memorandum of Points and Authorities, the Court's file and records in this action, all matters which may be judicially noticed pursuant to Rule 201 of the Federal Rules of Evidence, and such other evidence and arguments as may be made or presented at or before the hearing on this

Motion.

On March 28, 2016, MFS's counsel initiated the pre-filing meet and confer process by sending a letter to Plaintiff's counsel setting forth the substantive grounds and supporting legal authorities for the relief requested in this Motion. MFS's counsel also offered to provide Plaintiff's counsel additional time to evaluate the bases for this Motion on the condition that Plaintiff stipulate to enlarge MFS's responsive pleading deadline. Although Plaintiff's counsel stipulated to the requested enlargement of MFS's responsive pleading deadline, they have not otherwise responded to MFS's counsel's March 28, 2016 meet and confer letter, thus necessitating the filing of this Motion.

DATED: April 15, 2016

SWERDLOW FLORENCE SANCHEZ SWERDLOW & WIMMER

MCGUIREWOODS LLP


By: _____/s/ Matthew C. Kane_____
        Matthew C. Kane, Esq.

Attorneys for Defendant
MCLANE FOODSERVICE, INC.

**DEFENDANT MCLANE FOODSERVICE, INC.'S MOTION TO DISMISS OR STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND/OR 12(f)**

# REQUEST FOR JUDICIAL NOTICE

**TO THE HONORABLE KIMBERLY J. MUELLER, UNITED STATES DISTRICT COURT JUDGE, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Pursuant to Fed. R. Evid. 201(b) and (d), Defendant McLane Foodservice, Inc. ("MFS" or "Defendant") hereby requests that the Court take judicial notice of the following in support of its Motion to Dismiss or Strike Plaintiff's Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(6) and/or 12(f) (the "Motion"):

      Exhibit A:     Plaintiff's Complaint, which was filed in the Superior Court of California, County of San Joaquin on December 30, 2015 in Case No. STK-CV-UOE-2016-0000026 therein, and removed to this Court on March 25, 2016, commencing this Case No. 2:16-cv-00635-KJM-EFB. *See* Dkt. #1.

      Exhibit B:     Assembly Bill No. 1522, as introduced on January 16, 2014, from the legislative history on Cal. Lab. Code § 248.5.

Defendant's request is made pursuant to Fed. R. Evid. Rule 201(b) and (d) on the grounds that the foregoing documents are proper subjects for judicial notice because they are records of this Court and the Superior Court of the State of California and the California Legislature, and/or their contents are not subject to reasonable dispute and they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

DATED: April 15, 2016

      **SWERDLOW FLORENCE SANCHEZ SWERDLOW & WIMMER**

      **MCGUIREWOODS LLP**

      By:     /s/ Matthew C. Kane
            Matthew C. Kane, Esq.

      Attorneys for Defendant
      MCLANE FOODSERVICE, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff Justin Titus ("Plaintiff") is a former employee who worked as a truck driver for Defendant McLane Foodservice, Inc. ("MFS" or "Defendant").  Plaintiff's Fifth Cause of Action in the Complaint alleges that MFS failed to provide him with written notice setting forth the amount of his paid sick leave available in violation of Cal. Lab. Code § 246(h) ("Section 246(h)").  Plaintiff purports to allege his claim for Section 246(h) violations on behalf of himself and other similarly situated aggrieved employees, ostensibly pursuant to the California Labor Code Private Attorney General Act ("PAGA").  In connection with this Section 246(h) claim, Plaintiff seeks recovery of "compensatory, special, and general damages, including lost wages and related benefits," "civil and statutory penalties, including those available under Labor Code sections 226, 248.5, and 2699(f)," injunctive relief, pre-judgment and post-judgment interest, attorneys' fees and costs.  However, Plaintiff's claims for penalties and other monetary and injunctive relief in connection with his claim for Section 246(h) violations should be dismissed or stricken because such relief is unavailable to him as a private litigant and/or under PAGA as a matter of law:

First, there is no private right of action for violations of Section 246(h).  Therefore, Plaintiff's purported *individual* claims for damages, penalties and other monetary relief for violations of Section 246(h) are not legally viable.

Second, Labor Code § 248.5(e) ("Section 248.5(e)") expressly limits the relief available to a private plaintiff seeking to enforce claims for violations of Section 246(h) *on behalf of the public* to "equitable, injunctive, or restitutionary relief, and reasonable attorneys' fees and costs."  Cal. Lab. Code § 248.5(e).  Thus, Plaintiff is *precluded* from recovering *any damages or penalties* for violations of Section 246(h), and his claims for "compensatory, special and general damages" and "civil and statutory penalties" in connection with his Fifth Cause of Action fail as a matter of law. In addition, because Plaintiff is a *former employee*, his claim for *injunctive relief* also fails as a matter of law because he *lacks standing* to pursue such a claim.

Third, Plaintiff's prayer for statutory penalties pursuant to Cal. Lab. Code § 226 must be dismissed or stricken for the additional reason that Section 226 penalties are unavailable as a

matter of law for violations of Section 246(h).

Therefore, as we discuss more fully below, Plaintiff's Complaint should be dismissed or stricken as requested.

## II.     STATEMENT OF FACTS

Plaintiff is a former employee of MFS.  *See* Exh. A (Complaint), ¶ 29.  On December 30, 2015, Plaintiff filed his Complaint against MFS alleging the following four purported individual claims on behalf of himself pursuant to the California Fair Employment and Housing Act, Cal. Gov't Code § 12940 et seq. ("FEHA"), and purported representative action claim on behalf of all "aggrieved employees" pursuant to PAGA for violations of Section 264(h):

(1) Disability Discrimination in violation of FEHA;

(2) Failure to Accommodate in violation of FEHA;

(3) Failure to Engage in the Interactive Process in violation of FEHA;

(4) Failure to Prevent Discrimination in violation of FEHA; and

(5) Failure to Provide Notice of Paid Sick Leave in violation of Section 264(h).

*See* Exh. A (Complaint).

Plaintiff's Fifth Cause of Action is brought on the theory that MFS violated Section 246(h), which mandates that employers provide employees with written notice setting forth the amount of paid sick leave available, either on the employee's itemized wage statement described in Cal. Lab. Code § 226 or in a separate writing.  *See* Cal. Lab. Code § 246(h).  In connection with his Section 246(h) claim, Plaintiff seeks recovery of "compensatory, special, and general damages, including lost wages and related benefits," "civil and statutory penalties, including those available under Labor Code sections 226, 248.5, and 2699(f)," injunctive relief, pre-judgment and post-judgment interest, attorneys' fees and costs.  *See* Exh. A (Complaint), Prayer for Relief at ¶¶ 1-5.

## III.    LEGAL ARGUMENT

### A.     Applicable Legal Standards Under Fed. R. Civ. P. 12(b)(6) And 12(f)

Under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a motion to dismiss a complaint for failure to state a claim upon which relief can be granted can be made on either of two grounds: (1) a lack of a cognizable legal theory; or (2) the absence of sufficient facts alleged under a cognizable

legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Pursuant to Rule 12(b)(6), the Court may dismiss any claims for relief that are not available as a matter of law. *See, e.g., Singleton v. Univ. of California*, 1995 WL 16978, *1 (N.D. Cal. Jan. 6, 1995) (holding that Rule 12(b)(6) is an appropriate procedural vehicle for seeking dismissal of claims for punitive damages that are unavailable as a matter of law); *TJRK, Inc. v. Waage*, 2008 WL 4748179, *3 (S.D. Cal. Oct. 27, 2008) (dismissing prayer for punitive damages, treble damages and emotional distress); *CSL, L.L.C. v. Imperial Bldg. Products, Inc.*, 2004 WL 2647701, *1 (N.D. Cal. Mar. 22, 2004) (dismissing claims for all monetary relief other than nominal damages based on claims of false advertising).

Similarly, "[a] motion to strike may be used to strike any part of the prayer for relief when the recovery sought is unavailable as a matter of law." *Bassett v. Ruggles*, 2009 WL 2982895, *24 (E.D. Cal. Sept. 14, 2009) (Wanger, J.). *See also Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479 (C.D. Cal. 1996) (same); *Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d 559, 560 (8th Cir.1974) (same). Indeed, Fed. R. Civ. P. Rule 12(f) ("Rule 12(f)") empowers the Court to "order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."[1] Matters may also be stricken by a court to reduce trial complication and "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

**B.    PLAINTIFF'S CLAIMS AND ALLEGATIONS SEEKING DAMAGES AND CIVIL PENALTIES IN CONNECTION WITH HIS FIFTH CAUSE OF ACTION MUST BE DISMISSED OR STRICKEN**

**1.    There Is No Private Right Of Action For Violations Of Section 246(h)**

"Adoption of a regulatory statute does not automatically create a private right of action to sue for damages resulting from violations of the statute. Such a private right of action exists ***only*** if the language of the statute or its legislative history clearly indicates the Legislature intended to

---

[1] Matter is "immaterial" if it has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Allegations are "impertinent" if neither responsive nor relevant to the issues involved in the action and they could not be put in issue or given in evidence between the parties. *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120 n. 6 (D.P.R. 1972).

create such a right to sue for damages." *Jeske v. Maxim Healthcare Servs., Inc.*, 2012 WL 78242, *4 (E.D. Cal. Jan. 10, 2012) (O'Neill, J.) (quoting *Viko Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal.App.4th 55, 62-63 (1999) (emph. added). A private right of action therefore **only** exists "if the statute, in 'clear and understandable, unmistakable terms,' indicates an intent to create such a right." *Johnson v. Hewlett-Packard Co.*, 809 F.Supp.2d 1114, 1135 n. 23 (N.D. Cal. 2011) (quoting *Viko Ins. Servs.*, 70 Cal.App.4th at 62-63).

On its face, the plain language of Section 246(h) does *not* contain *any* indication of a legislative intent to create a private right of action for violations of its requirements. Indeed, it does not provide any substantive right to wages or damages, much less clearly, understandably or unmistakably indicate an intent to create such a right. Likewise, the legislative history of Cal. Lab. Code § 248.5(e) ("Section 248.5(e)"), which sets forth the remedies available for a violation of Section 246(h), strongly suggests that the Legislature intended to **not** provide for a private right of action for violations of Section 246(h). To that end, the original draft of Section 248.5(e) provided that "*a person aggrieved* by a violation of [Section 246(h)] … *may bring a civil action* in a court of competent jurisdiction against the employer or other person violating this article ….' *See* Exh. B at p. 13 (emph. added). However, the version of Section 248.5(e) that was ultimately enacted by the Legislature and signed into law contains *no reference* to "a person" being authorized to bring a civil action, but, instead, provides that **only** the "**Labor Commissioner** or the **Attorney General may bring a civil action** in a court of competent jurisdiction against the employer or other person violating this article…." Cal. Lab. Code § 248.5(e) (emph. added).

Accordingly, both the plain language of Section 246(h) and the legislative history of Section 248.5(e) establish that there is **no private right of action** for violations of Section 246(h). Therefore, Plaintiff's claims for "compensatory, special, and general damages, including lost wages and related benefits" and "statutory penalties, including those available under Labor Code sections 226 [and] 248.5" in connection with his Fifth Cause of Action fail as a matter of law and should be dismissed or stricken.

76554673.3

4

**DEFENDANT MCLANE FOODSERVICE, INC.'S MOTION TO DISMISS OR STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND/OR 12(f)**

**2. Plaintiff's Remedies For Violations Of Section 246(h) Are Limited To Only Equitable Or Restitutionary Relief**

Section 248.5(e) expressly *limits* the relief available to a private plaintiff seeking to enforce claims for violations of Section 246(h) *on behalf of the public* (i.e., pursuant to PAGA) to "equitable, injunctive, or restitutionary relief, and reasonable attorneys' fees and costs":

> "[A]ny person or entity enforcing this article **on behalf of the public** as provided for **under applicable state law** shall, upon prevailing, be entitled **only to equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs**."

Cal. Lab. Code § 248.5(e) (emph. added). Damages and penalties do not constitute restitutionary relief and are thus not recoverable as restitution. Indeed, "[i]n describing the difference between restitutionary and compensatory relief, California courts have noted that *restitution* describes relief in which a defendant is asked to *return something he wrongfully received*, while *damages* describe relief in which a defendant is asked to *compensate a plaintiff for injury suffered* as a result of the defendant's conduct." *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, *3 (S.D. Cal. July 27, 2007) (emph. added). Further, the notion that restitution under Section 246(h) could encompass the type of damages Plaintiff seeks would be nonsensical because Section 246(h) only governs the itemization requirements pertaining to the documentation of paid sick leave balances.

Plaintiff does not and cannot allege any facts plausibly suggesting that he suffered any lost wages or was otherwise wrongfully deprived of some form of restitutionary damages as a result of MFS's alleged failure to provide him with a written notice setting forth the amount of paid sick leave available. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n. 3 (2007) (holding that a plaintiff's "bare averment that he wants relief and is entitled to it" does not satisfy Fed. R. Civ. P. 8(a)(2)'s mandate that a complaint contain a "short and plain statement of claim showing that the pleader is entitled to relief," which must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]"); *Morgan v. Napolitano*, 2010 WL 3749260, *6 (E.D. Cal. Sep. 23, 2010) (Karlton, J.) ("Blanket general allegations are not sufficient to allege facts from which the Court can infer causation."). Therefore, because Plaintiff is precluded from

recovering any damages or penalties for any purported violation of Section 246(h), his claims for "compensatory, special and general damages, including lost wages and related benefits" and "civil and statutory penalties" in connection with his Fifth Cause of Action fail as a matter of law and should be dismissed or stricken.

In addition, because Plaintiff is a former employee, his claim for injunctive relief likewise fails as a matter of law because he lacks standing as a former employee to pursue such a claim given that he cannot demonstrate that he will suffer any threat of real and immediate future harm as a result of the conduct alleged in the Complaint. *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) ("Plaintiffs not employed by Costco throughout this case do not have standing to seek injunctive relief"). That Plaintiff has purported to assert his Section 246(h) claim on a representative basis pursuant to PAGA does not alter this analysis. *Cf. Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("'That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"). Indeed, in the context of putative class actions, the Ninth Circuit has said, "[a]ny injury unnamed members of this proposed class may have suffered is simply irrelevant to the question of whether the named plaintiffs are entitled to … injunctive relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). "Unless the named plaintiffs are themselves entitled to seek [such] relief, they may not represent a class seeking that relief." *Id.*

Accordingly, Plaintiff's claims for "compensatory, special and general damages," "civil and statutory penalties" and injunctive relief in connection with his Prayer for Relief under his Fifth Cause of Action must be dismissed or stricken.

### 3. Penalties Under Cal. Lab. Code § 226 Are Not Available For Violations Of Section 246(h)

Plaintiff's prayer for statutory penalties pursuant to Cal. Lab. Code § 226 ("Section 226") in connection with his Fifth Cause of Action for purported Section 246(h) violations also must be dismissed or stricken for the additional reason that Section 226 penalties are unavailable as a

matter of law for Section 246(h) violations. Indeed, Section 246(h) itself precludes the recovery of Section 226 penalties by providing that "[t]he penalties described in this article for a violation of this subdivision *shall be in lieu of the penalties for a violation of Section 226*." Cal. Lab. Code § 246(h) (emph. added). Indeed, the only penalties recoverable for violations of Section 246(h) are those specified in Section 248.5(e), which are only recoverable by "[t]he Labor Commissioner or the Attorney General" who "may bring a civil action in a court of competent jurisdiction against the employer or other person violating this article." Cal. Lab. Code § 248.5(h). Therefore, Section 226 penalties are *not available* for violations of Section 246(h), and Plaintiff's claims for such penalties must be dismissed or stricken.

## IV. CONCLUSION

For all of the foregoing reasons, MFS requests that the Court dismiss or strike Plaintiff's Complaint as set forth herein.


DATED:  April 15, 2016               SWERDLOW FLORENCE SANCHEZ SWERDLOW & WIMMER

                                      MCGUIREWOODS LLP


                                      By:   ____/s/ Matthew C. Kane_____
                                             Matthew C. Kane, Esq.

                                      Attorneys for Defendant
                                      MCLANE FOODSERVICE, INC.

1 | **MAYALL HURLEY**
A Professional Corporation
2 | 2453 Grand Canal Boulevard
Stockton, California 95207-8253
3 | Telephone (209) 477-3833
4 | **ROBERT J. WASSERMAN**
CA State Bar No. 258538
5 | **VLADIMIR J. KOZINA**
CA State Bar No. 284645
6 |
7 | Attorneys for Plaintiff JUSTIN TITUS

FILED
SUPERIOR COURT - STOCKTON

**2015 DEC 30 PM 2: 46**

ROSA JUNQUEIRO, CLERK

DEPUTY

THIS CASE HAS BEEN ASSIGNED TO
JUDGE ROGER ROSS IN DEPARTMENT 13
FOR ALL PURPOSED, INCLUDING TRIAL

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF SAN JOAQUIN**

10 | JUSTIN TITUS,

11 |       Plaintiff,

12 |

13 | v.

14 | MCLANE FOODSERVICE, INC., a
corporation; and DOES 1-100, inclusive,

15 |

16 |       Defendants.

Case No.:

STK-CV-UOE -2016-0000324

**COMPLAINT FOR DAMAGES FOR**

1. **DISABILITY DISCRIMINATION**
2. **FAILURE TO ACCOMMODATE**
3. **FAILURE TO ENGAGE IN THE
   INTERACTIVE PROCESS**
4. **FAILURE TO PREVENT
   DISCRIMINATION**
5. **FAILURE TO PROVIDE NOTICE OF
   PAID SICK LEAVE (PAGA)**

**JURY TRIAL DEMANDED**

18 |

19 |

20 |       Plaintiff Joshua Titus brings this action against McLane Foodservice, Inc., and Does 1

21 | through 100, for general, compensatory, punitive, and statutory damages, injunctive relief,

22 | declaratory relief, costs, and attorneys' fees, resulting from Defendants' unlawful and tortious

23 | conduct, as grounds therefore alleges:

24 | / / /

25 | / / /

26 | / / /

27 | / / /

28 | / / /

**EXHIBIT A**

## PARTIES

1.     Justin Titus ("Titus") at all times relevant herein was employed in Tracy, California, and was an "employee" as defined by Government Code section 12926(c) and the Labor Code.

2.     McLane Foodservice, Inc. ("McLane") is a corporation organized under the laws of the state of Texas, qualified to conduct and conducting business in California, and an "employer" as defined by Government Code sections 12926(d), 12940(a), and 12940(j)(4)(A) and the Labor Code.

3.     McLane and Does 1-100 are collectively referred to herein as Defendants.

4.     Titus is not aware of the true names and capacities of the Defendants sued herein as Does 1 through 100, whether individual, corporate, associate, or otherwise and therefore sues such Defendants by these fictitious names. Titus will amend this Complaint to allege their true names and capacities when ascertained. Titus is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Titus' injuries and damages herein alleged were legally caused by such Defendants. Unless otherwise indicated, each Defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-Defendant.

5.     Titus is informed and believes and thereupon alleges that at all times mentioned herein, each of the Defendants, including each Doe Defendant, was acting as the agent, servant, employee, partner and/or joint venturer of and was acting in concert with each of the remaining Defendants, including each Doe Defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action. Each Defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining Defendants.

## VENUE AND JURY TRIAL DEMAND

6.     Venue is proper in this court because the discriminatory acts alleged herein took place in San Joaquin County, and Titus' place of employment with Defendants was located within San Joaquin County. Titus hereby demands a jury trial.

**EXHIBIT A**

## PRIVATE ATTORNEY GENERAL ACT ALLEGATIONS

11. The Private Attorney General Act ("PAGA"), as set forth at California Labor Code section 2698 et seq., is and at all times relevant herein was applicable to Titus' employment with Defendants.

12. Pursuant to Labor Code section 2699(a), any provision of the Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures outlined in Labor Code section 2699.3.

13. Titus was employed by Defendants and the alleged violations were committed against him during his time of employment. Titus is therefore an aggrieved employee as defined by Labor Code section 2699(c). Other current and former employees are also aggrieved employees in that one or more of the alleged violations were also committed against them during their time of employment with Defendants.

14. Pursuant to Labor Code section 2699(f), the civil penalty recoverable in a PAGA action is that which is provided for by the Labor Code or, where no civil penalty is specifically provided, one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

15. Pursuant to California Labor Code section 2699(g), an aggrieved employee may recover the civil penalty on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed. Furthermore, any employee who prevails in any such action shall be entitled to an award of reasonable attorney's fees and costs.

16. Pursuant to Labor Code section 2699.3, an aggrieved employee may pursue a civil action arising under the PAGA after the following requirements have been met:

a. The aggrieved employee shall give written notice by certified mail to the LWDA and the employer (hereinafter "Employee's Notice") of the specific provisions of

1  California Labor Code alleged to have been violated, including the facts and theories to

2  support the alleged violations;

3         b.    The LWDA shall provide notice (hereinafter "LWDA's Notice") to the

4  employer and the aggrieved employee by certified mail that it does not intend to investigate

5  the alleged violation within 30 calendar days of the postmark date of the Employee's

6  Notice. Upon receipt of the LWDA's Notice, or if the LWDA does not provide notice

7  within 33 calendar days of the postmark date of the Employee's Notice, the aggrieved

8  employee may commence a civil action pursuant to California Labor section 2699 to

9  recover civil penalties in addition to any other penalties to which the employee may be

10  entitled.

11       17.    On November 11, 2015, Titus provided written notice by certified mail to the

12  LWDA and Defendants of the specific provisions of the Labor Code alleged to have been violated

13  by Defendants, including the facts and theories to support the alleged violations. Attached as

14  **Exhibit 1** and incorporated by this reference as though fully set forth herein is a copy of Titus'

15  written notice to the LWDA and Defendants.

16       18.    As of this filing, more than 33 calendar days following Titus' written notice to the

17  LWDA and Defendants, the LWDA has not provided written notice that it intends to investigate

18  Titus' claims. Accordingly, Titus has satisfied the administrative prerequisites under Labor Code

19  section 2699.3 to bring a civil action to recover penalties against Defendants, as proxy for the

20  LWDA, on behalf of himself and other aggrieved employees, current and former.

21  <div align="center">**GENERAL ALLEGATIONS**</div>

22       19.    Titus was hired by McLane on July 15, 2015, as a Transportation Driver. As with

23  other new Transportation Drivers, Titus was assigned to an initial ninety-day probation period

24  during which his performance was evaluated on a monthly basis.

25       20.    Titus performed well during his probationary period. For example, on his first

26  performance evaluation, dated August 15, 2015, Titus' supervisor commented, "[Titus] has shown

27  us that he understands the job and is willing to do whatever it takes to get it done. We have thrown

28

1   several specials and layovers in his direction and [Titus] has been successful in completing the

2   routes."

3        21.     On his second performance evaluation, dated September 22, 2015, Titus' supervisor

4   commented, "[Titus] has never turned down any work and has shown us multiple times that he is a

5   team player."

6        22.     On September 29, 2015, while making a delivery on one of his routes, Titus fell

7   inside his trailer, injuring his knee. Titus reported his injury to the on-call dispatcher who sent a

8   driver to pick Titus up and return him to the yard. Titus waited in the yard for nearly ten hours

9   before he was then taken to a physician for treatment.

10        23.     Titus was evaluated by the physician, who diagnosed him with a knee sprain and

11   restricted Titus to light duty for approximately two weeks, which prevented Titus from running his

12   regular routes.

13        24.     Approximately one week later, on October 5, 2015, Titus was issued a written

14   warning for having suffered his injury. The nature of Titus' violation was described as follows:

15                      On 09/29/15 Justin Titus was involved in an incident on Route where he
                   fell on his knee in the trailer. Justin has to be relieved from his route. The

16                      driver is still going through his 90 day probation.

17        25.     Additionally, while Titus was restricted to light duty, his supervisors and McLane's

18   Operations Managers, "Louie" and "Noriel", repeatedly told Titus that he needed to get off light

19   duty and back to full duty status because they wanted him back on his route.

20        26.     On October 12, 2015, Titus was issued his third probationary performance

21   evaluation. The evaluation, in stark contrast to the evaluations Titus received prior to his injury,

22   was highly critical, directly referenced his injury as a negative factor, and stated that his probation

23   would be extended another sixty days.

24        27.     Around this same time, Titus returned for a follow-up appointment with the

25   physician, who prescribed him a course of physical therapy. Although Titus was not yet fully

26   recovered, and indeed was undergoing a course of physical therapy, Titus returned to running

27   smaller routes. Moreover, Louie expressed displeasure with Titus' appointments, telling Titus to

28   schedule his appointments after hours.

1     28.    On approximately October 15, 2015, Noriel told Titus that Titus needed to "take

2    some time off" so that McLane could "think about some things." Titus was told McLane would

3    contact him within twenty-four to forty-eight hours.

4     29.    The following Monday, October 19, 2015, having not heard back from McLane,

5    Titus called McLane's Terminal Manager, Sarah Reeves ("Reeves"), to inquire about his status.

6    Reeves told Titus to meet with her later that day. When Titus arrived at work, he met with Reeves

7    and others in Reeves' office. Reeves told Titus that his employment was being terminated. When

8    Titus inquired about the reasons for his termination, Reeves responded that she did not have to give

9    Titus a reason because he was still within his ninety day probationary period. Titus protested his

10    termination, stating that he believed he had been terminated because of his injury, which was the

11    real reason for his termination.

12     30.    On December 22, 2015, Titus filed a complaint with the Department of Fair

13    Employment and Housing ("DFEH") alleging disability discrimination, failure to accommodate,

14    failure to engage in the interactive process, and failure to provide a workplace free from

15    discrimination and received a right-to-sue notice that same day. McLane Foodservice was served

16    with a copy of Titus' complaint and right-to-sue notice by certified mail.

17

18                      **FIRST CAUSE OF ACTION**

             **VIOLATION OF GOVERNMENT CODE SECTION 12940(a)**

19                         **(Disability Discrimination)**

                        **Against all Defendants**

20

21     31.    Titus hereby realleges and incorporates by reference Paragraphs 1 through 31 above

22    as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of

23    this cause of action.

24     32.    The Fair Employment and Housing Act ("FEHA") explicitly prohibits an employer

25    from refusing to hire or employ a person, discharging a person from employment, or

26    discriminating against such person in compensation or in terms, conditions or privileges of

27    employment on the basis of race, religious creed, color, national origin, ancestry, physical

28    disability, mental disability, medical condition, genetic information, marital status, sex, gender,

1   gender identity, gender expression, age, sexual orientation or military and veteran status. Gov.

2   Code § 12940(a).

3       33.   At all times herein mentioned, Titus was qualified for his position with Defendants

4   based upon his work experience and performance history.

5       34.   Defendants were at all times material herein Titus' employer pursuant to Gov. Code

6   § 12926(d) and were therefore barred from discriminating against its employees based on

7   disability and/or perceived disability.

8       35.   Nevertheless, as set forth above, Defendants discriminated against Titus based on

9   disability, perceived disability, and/or future perceived disability, in violation of Gov. Code §

10   12940(a).

11       36.   The acts taken toward Titus were carried out by and/or ratified by Defendants

12   and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and

13   malicious manner in order to injure or damage Titus, thereby justifying an award to him of

14   punitive damages.

15       37.   As a direct and proximate result of Defendants' conduct, Titus has been harmed and

16   requests relief as hereafter provided.

17   <div align="center">**SECOND CAUSE OF ACTION**</div>

18   <div align="center">**VIOLATION OF GOVERNMENT CODE SECTION 12940(m)**<br>**(Failure to Accommodate)**</div>

19   <div align="center">**Against all Defendants**</div>

20       38.   Titus hereby realleges and incorporates by reference Paragraphs 1 through 37 above

21   as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of

22   this cause of action.

23       39.   The FEHA requires an employer to "make reasonable accommodation for the

24   known physical or mental disability of an applicant or employee." Gov. Code § 12940(m).

25       40.   Defendants were at all times material herein Titus' employer pursuant to Gov. Code

26   § 12926(d), knew of his disability and were required to reasonably accommodate him pursuant to

27   Gov. Code § 12940(m).

28

41. Nevertheless, as set forth above, Defendants failed to reasonably accommodate Titus.

42. The acts taken toward Titus were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Titus, thereby justifying an award to him of punitive damages.

43. As a direct and proximate result of Defendants' conduct, Titus has been harmed and requests relief as hereafter provided.

### THIRD CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12940(n)
#### (Failure to Engage in the Interactive Process)
#### Against all Defendants

44. Titus hereby realleges and incorporates by reference Paragraphs 1 through 43 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

45. The FEHA requires an employer "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical disability or known medical condition." Gov. Code § 12940(n).

46. Defendants were at all times material hereto Titus' employer pursuant to Gov. Code § 12926(d), had knowledge of his disability and were required to engage in the interactive process pursuant to Gov. Code § 12940(n).

47. Nevertheless, as set forth above, Defendants failed to engage in a timely, good faith interactive process with Titus.

48. The acts taken toward Titus were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and

malicious manner in order to injure or damage Titus, thereby justifying an award to him of punitive damages.

49.     As a direct and proximate result of Defendants' conduct, Titus has been harmed and requests relief as hereafter provided.

### FOURTH CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12940(k)
#### (Failure to Prevent Discrimination)
#### Against all Defendants

50.     Titus hereby realleges and incorporates by reference Paragraphs 1 through 49 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

51.     The FEHA requires an employer to take all reasonable steps necessary to prevent discrimination and harassment from occurring. Gov. Code § 12940(k).

52.     Defendants were at all times relevant herein Titus' employer pursuant to Government Code section 12926(d) and were therefore required to prevent discrimination pursuant to Government Code section 12940(k).

53.     Defendants knew or should have known of the discrimination but did nothing to prevent it. Instead, Defendants encouraged, permitted and/or acquiesced to the discrimination. Consequently, Defendants failed to take all reasonable steps to prevent the discrimination from occurring in violation of Government Code section 12940(k).

54.     The acts taken toward Titus were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Titus, thereby justifying an award to him of punitive damages.

55.     As a direct and proximate result of Defendants' conduct, Titus has been harmed and requests relief as hereafter provided.

/ / /

/ / /

/ / /

# FIFTH CAUSE OF ACTION
## VIOLATION OF LABOR CODE SECTION 246(h)
### (Failure to Provide Notice of Paid Sick Leave)
### Against all Defendants

56.     Titus hereby realleges and incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

57.     Pursuant to Labor Code § 246(h) "An employer shall provide an employee with written notice that sets forth the amount of paid sick leave available, or paid time off leave an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement described in section 226 or in a separate writing provided on the designated pay date with the employee's payment of wages."

58.     As of August 15, 2015, Titus was employed by McLane in California for more than 30 days and was therefore entitled to paid sick leave under Labor Code section 246.

59.     During his employment with Defendants, Titus received physical checks and accompanying physical wage statements. The wage statements Titus received from Defendants from August 15, 2015, forward did not state the amount of paid sick time Titus had available, nor was Titus furnished with a writing along with his physical wage check any other writing setting forth the amount of paid sick time Titus had available, in violation of Labor Code section 246(h).

60.     Titus is informed and believes that Defendants have a uniform policy of issuing physical checks while failing to state the amount of paid sick leave available on any writings issued in conjunction with those physical checks. Accordingly, Titus is informed and believes that other of Defendants employees, current and former, are similarly aggrieved.

61.     Wherefore, Titus and the other current and former employees have been damaged as set forth above and request relief as hereafter provided. Titus also hereby requests the civil penalty, attorney's fees and costs recoverable in a civil action brought by an aggrieved employee on behalf of himself and other current and former employees.

///

///

## PRAYER FOR RELIEF

WHEREFORE, Titus prays judgment against Defendants and each of them as follows:

**As to the First through Fourth Causes of Action:**

1. For economic (special) and non-economic (general) damages in an amount yet unknown, but in excess of the minimum jurisdictional limit of this Court;

2. For injunctive relief pursuant to Government Code section 19265(c);

3. For punitive and/or exemplary damages;

4. For statutory attorneys' fees and costs, including those available under Government Code section 12965(b) and Code of Civil Procedure section 1021.5;

5. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including that available under Civil Code sections 3287(a) and 3289(b);

6. For such other and further relief as the Court deems just and proper.

**As to the Fifth Cause of Action:**

1. For compensatory, special, and general damages, including lost wages and related benefits, in an amount according to proof, but in excess of the minimum jurisdictional limit of this Court;

2. For civil and statutory penalties, including those available under Labor Code sections 226, 248.5, and 2699(f);

3. For an order requiring Defendants to ensure compliance pursuant to Labor Code sections 226 and 248.5;

4. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including those available under Civil Code sections 3287(a) and 3289(b), and Labor Code section 248.5;

5. For statutory attorneys' fees and costs, including those available under Labor Code sections 226, 248.5, 2699(g), and Code of Civil Procedure section 1021.5; and

6. For such other and further relief as the court deems just and proper.

1    **DATED:** December 28, 2015         **MAYALL HURLEY P.C.**

2

3            By _____

                    ROBERT J. WASSERMAN

4                   VLADIMIR J. KOZINA

                  Attorneys for Plaintiff,

5                   JUSTIN TITUS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Damages
Page 12 of 12

CALIFORNIA LEGISLATURE—2013–14 REGULAR SESSION

# ASSEMBLY BILL                    No. 1522

## Introduced by Assembly Member Gonzalez

### January 16, 2014

An act to amend Section 226 of, and to add Article 1.5 (commencing with Section 245) to Chapter 1 of Part 1 of Division 2 of, the Labor Code, relating to employment.

LEGISLATIVE COUNSEL'S DIGEST

AB 1522, as introduced, Gonzalez. Employment: paid sick days.

Existing law authorizes employers to provide their employees paid sick leave.

This bill would provide that an employee, as defined, who works in California for 7 or more days in a calendar year is entitled to paid sick days, as defined, to be accrued at a rate of no less than one hour for every 30 hours worked. An employee would be entitled to use accrued sick days beginning on the 90th calendar day of employment. The bill would require employers to provide paid sick days, upon the request of the employee, for diagnosis, care, or treatment of health conditions of the employee or an employee's family member, or for leave related to domestic violence or sexual assault. An employer would be prohibited from discriminating or retaliating against an employee who requests paid sick days. The bill would require employers to satisfy specified posting and notice and recordkeeping requirements. The bill would also make conforming changes.

This bill would require the Labor Commissioner to administer and enforce these requirements, including the promulgation of regulations, investigation, mitigation, and relief of violations of these requirements. This bill would authorize the Labor Commissioner to impose specified

99

administrative fines for violations and would authorize an aggrieved person, the commissioner, the Attorney General, or an entity a member of which is aggrieved to bring an action to recover specified civil penalties against an offender, as well as attorney's fees, costs, and interest.

The bill would specify that it does not apply to employees covered by a collective bargaining agreement that provides for paid sick days, nor does it lessen any other obligations of the employer to employees. This bill would further specify that it does not apply to employees in the construction industry covered by a collective bargaining agreement if the agreement expressly waives the requirements of this article in clear and unambiguous terms. However, the bill would specify that it applies to certain public authorities, established to deliver in-home supportive services, except where a collective bargaining agreement provides for an incremental wage increase sufficient to satisfy the bill's requirements for accrual of sick days.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1      SECTION 1. The Legislature finds and declares the following:
2      (a) Nearly every worker in the State of California will at some
3   time during the year need some time off from work to take care
4   of his or her own health or the health of family members.
5      (b) Many workers in California do not have any paid sick days,
6   or have an inadequate number of paid sick days, to care for their
7   own health or the health of family members.
8      (c) Low-income workers are significantly less likely to have
9   paid sick time than other workers.
10     (d) Providing workers time off to attend to their own health care
11   and the health care of family members will ensure a healthier and
12   more productive workforce in California.
13     (e) Paid sick days will have an enormously positive impact on
14   the public health of Californians by allowing sick workers paid
15   time off to care for themselves when ill, thus lessening their
16   recovery time and reducing the likelihood of spreading illness to
17   other members of the workforce.
18     (f) Paid sick days will allow parents to provide personal care
19   for their sick children. Parental care ensures children's speedy

Exh. B

1 recovery, prevents more serious illnesses, and improves children's
2 overall mental and physical health.
3   (g) Providing paid sick days is affordable for employers and
4 good for business.
5   (h) Employers who provide paid sick days enjoy greater
6 employee retention and reduce the likelihood of employees coming
7 to work sick. Studies have shown that costs of decreased
8 productivity caused by sick workers exceed the costs of employee
9 absenteeism.
10   (i) Many adults have significant elder care responsibilities
11 requiring them to take time off from work or to work reduced
12 hours.
13   (j) Employees frequently lose their jobs or are disciplined for
14 taking sick days to care for sick family members or to recover
15 from their own illnesses.
16   (k) Workers whose jobs involve significant contact with the
17 public, such as service workers and restaurant workers, are very
18 unlikely to have paid sick days. Often, these workers have no
19 choice but to come to work when they are ill, thereby spreading
20 illness to coworkers and customers.
21   (*l*) Domestic violence and sexual assault affect many persons
22 without regard to age, race, national origin, sexual orientation, or
23 socioeconomic status.
24   (m) Domestic violence is a crime that has a devastating effect
25 on families, communities, and the workplace. It impacts
26 productivity, effectiveness, absenteeism, and employee turnover
27 in the workplace. The National Crime Survey estimates that
28 175,000 days of work each year are missed due to domestic
29 violence.
30   (n) Survivors of domestic violence and sexual assault may be
31 vulnerable at work when trying to end an abusive relationship
32 because the workplace may be the only place where the perpetrator
33 knows to contact the victim. Studies show that up to one-half of
34 domestic violence victims experience job loss. Forty percent
35 reported on-the-job harassment. Nearly 50 percent of sexual assault
36 survivors lose their jobs or are forced to quit in the aftermath of
37 the assaults.
38   (o) Affording survivors of domestic violence and sexual assault
39 paid sick days is vital to their independence and recovery.

EXHIBIT B

1  SEC. 2.  In enacting this act, it is the intent of the Legislature
2  to do the following:
3  (a) Ensure that workers in California can address their own
4  health needs and the health needs of their families by requiring
5  employers to provide a minimum level of paid sick days including
6  time for family care.
7  (b) Decrease public and private health care costs in California
8  by enabling workers to seek early and routine medical care for
9  themselves and their family members and to address domestic
10  violence or sexual assault.
11  (c) Protect employees in California from losing their jobs while
12  they use sick days to care for themselves or their families.
13  (d) Provide economic security to employees in California who
14  take time off from work for reasons related to domestic violence
15  or sexual assault.
16  (e) Safeguard the welfare, health, safety, and prosperity of the
17  people of and visitors to California.
18  SEC. 3.  Section 226 of the Labor Code is amended to read:
19  226.  (a) ~~Every~~ *An* employer shall, semimonthly or at the time
20  of each payment of wages, furnish ~~each of his or her employees~~
21  *to each employee*, either as a detachable part of the check, draft,
22  or voucher paying the employee's wages, or separately ~~when~~ *if*
23  wages are paid by personal check or cash, an accurate itemized
24  statement in writing showing (1) gross wages earned, (2) total
25  hours worked by the employee, ~~except for any employee whose~~
26  *unless the employee's* compensation is solely based on a salary
27  and ~~who~~ *the employee* is exempt from payment of overtime under
28  subdivision (a) of Section 515 or ~~any~~ *an* applicable order of the
29  Industrial Welfare Commission, (3) the number of piece-rate units
30  earned and ~~any~~ *the* applicable piece rate if the employee is paid
31  on a piece-rate basis, (4) all deductions, provided that all deductions
32  made on written orders of the employee may be aggregated and
33  shown as one item, (5) net wages earned, (6) the inclusive dates
34  of the period for which the employee is paid, (7) the name of the
35  employee and only the last four digits of his or her social security
36  number or an employee identification number other than a social
37  security number, (8) the name and address of the legal entity that
38  is the employer and, if the employer is a farm labor contractor, as
39  defined in subdivision (b) of Section 1682, the name and address
40  of the legal entity that secured the services of the employer, ~~and~~

**Exh. B**

1 (9) *paid sick leave accrued and used pursuant to Article 1.5*
2 *(commencing with Section 245), and (10)* all applicable hourly
3 rates in effect during the pay period and the corresponding number
4 of hours worked at each hourly rate by the employee and, beginning
5 July 1, 2013, if the employer is a temporary services employer as
6 defined in Section 201.3, the rate of pay and the total hours worked
7 for each temporary services assignment. The deductions made
8 from payment of wages shall be recorded in ink or other indelible
9 form, properly dated, showing the month, day, and year, and a
10 copy of the statement and the record of the deductions shall be
11 kept on file by the employer for at least three years at the place of
12 employment or at a central location within the State of California.
13 For purposes of this subdivision, "copy" includes a duplicate of
14 the itemized statement provided to an employee or a
15 computer-generated record that accurately shows all of the
16 information required by this subdivision.
17   (b) An employer that is required by this code or ~~any~~ *a* regulation
18 adopted pursuant to this code to keep the information required by
19 subdivision (a) shall afford current and former employees the right
20 to inspect or copy records pertaining to their employment, upon
21 reasonable request to the employer. The employer may take
22 reasonable steps to ensure the identity of a current or former
23 employee. If the employer provides copies of the records, the actual
24 cost of reproduction may be charged to the current or former
25 employee.
26   (c) An employer who receives a written or oral request to inspect
27 or copy records pursuant to subdivision (b) pertaining to a current
28 or former employee shall comply with the request as soon as
29 practicable, but no later than 21 calendar days from the date of the
30 request. A violation of this subdivision is an infraction.
31 Impossibility of performance, not caused by or a result of a
32 violation of law, shall be an affirmative defense for an employer
33 in any action alleging a violation of this subdivision. An employer
34 may designate the person to whom a request *is made* under this
35 subdivision ~~will be made~~.
36   (d) This section does not apply to ~~any~~ *an* employer of ~~any~~ *a*
37 person employed by the owner or occupant of a residential dwelling
38 whose duties are incidental to the ownership, maintenance, or use
39 of the dwelling, including the care and supervision of children, or

**EXHIBIT B**

**Exh. B**

1   whose duties are personal and not in the course of the trade,
2   business, profession, or occupation of the owner or occupant.
3      (e) (1)  An employee suffering injury as a result of a knowing
4   and intentional failure by an employer to comply with subdivision
5   (a) is entitled to recover the greater of all actual damages or fifty
6   dollars ($50) for the initial pay period in which a violation occurs
7   and one hundred dollars ($100) per employee for each violation
8   in a subsequent pay period, not to exceed an aggregate penalty of
9   four thousand dollars ($4,000), and is entitled to an award of costs
10  and reasonable attorney's fees.
11     (2) (A)  An employee is deemed to suffer injury for purposes
12  of this subdivision if the employer fails to provide a wage
13  statement.
14     (B)  An employee is deemed to suffer injury for purposes of this
15  subdivision if the employer fails to provide accurate and complete
16  information as required by any one or more of items (1) to ~~(9),~~
17  *(10),* inclusive, of subdivision (a) and the employee cannot
18  promptly and easily determine from the wage statement alone one
19  or more of the following:
20     (i)  The amount of the gross wages or net wages paid to the
21  employee during the pay period or any of the other information
22  required to be provided on the itemized wage statement pursuant
23  to items (2) to (4), inclusive, (6), ~~and (9)~~ *(9), and (10)* of
24  subdivision (a).
25     (ii)  Which deductions the employer made from gross wages to
26  determine the net wages paid to the employee during the pay
27  period. Nothing in this subdivision alters the ability of the employer
28  to aggregate deductions consistent with the requirements of item
29  (4) of subdivision (a).
30     (iii)  The name and address of the employer and, if the employer
31  is a farm labor contractor, as defined in subdivision (b) of Section
32  1682, the name and address of the legal entity that secured the
33  services of the employer during the pay period.
34     (iv)  The name of the employee and only the last four digits of
35  his or her social security number or an employee identification
36  number other than a social security number.
37     (C)  For purposes of this paragraph, "promptly and easily
38  determine" means a reasonable person would be able to readily
39  ascertain the information without reference to other documents or
40  information.

Exh. B

1    (3)  For purposes of this subdivision, a "knowing and intentional
2  failure" does not include an isolated and unintentional payroll error
3  due to a clerical or inadvertent mistake. In reviewing for
4  compliance with this section, the factfinder may consider as a
5  relevant factor whether the employer, prior to an alleged violation,
6  has adopted and is in compliance with a set of policies, procedures,
7  and practices that fully comply with this section.
8    (f)  A failure by an employer to permit a current or former
9  employee to inspect or copy records within the time set forth in
10  subdivision (c) entitles the current or former employee or the Labor
11  Commissioner to recover a seven-hundred-fifty-dollar ($750)
12  penalty from the employer.
13    (g)  The listing by an employer of the name and address of the
14  legal entity that secured the services of the employer in the itemized
15  statement required by subdivision (a) shall not create any liability
16  on the part of that legal entity.
17    (h)  An employee may also bring an action for injunctive relief
18  to ensure compliance with this section, and is entitled to an award
19  of costs and reasonable attorney's fees.
20    (i)  This section does not apply to the state, to ~~any~~ *a* city, county,
21  city and county, district, or to any other governmental entity, except
22  that if the state or a city, county, city and county, district, or other
23  governmental entity furnishes its employees with a check, draft,
24  or voucher paying the employee's wages, the state or a city, county,
25  city and county, district, or other governmental entity shall use no
26  more than the last four digits of the employee's social security
27  number or shall use an employee identification number other than
28  the social security number on the itemized statement provided with
29  the check, draft, or voucher.
30    SEC. 4.  Article 1.5 (commencing with Section 245) is added
31  to Chapter 1 of Part 1 of Division 2 of the Labor Code, to read:
32
33                Article 1.5.  Paid Sick Days
34
35    245.  This article shall be known and may be cited as the
36  Healthy Workplaces, Healthy Families Act of 2014.
37    245.5.  For the purposes of this article the following terms have
38  the following meanings:
39    (a)  "Employee" does not include the following:

EXHIBIT B

**AB 1522** — 8 —

1    (1) An employee covered by a valid collective bargaining
2  agreement if the agreement expressly provides for the wages, hours
3  of work, and working conditions of employees, and expressly
4  provides for paid sick days or a paid leave or paid time off policy
5  that permits the use of sick days for those employees, final and
6  binding arbitration of disputes concerning the application of its
7  paid sick days provisions, premium wage rates for all overtime
8  hours worked, and regular hourly rate of pay of not less than 30
9  percent more than the state minimum wage rate.
10   (2) An employee in the construction industry covered by a valid
11  collective bargaining agreement if the agreement expressly provides
12  for the wages, hours of work, and working conditions of
13  employees, premium wage rates for all overtime hours worked,
14  and regular hourly pay of not less than 30 percent more than the
15  state minimum wage rate, and the agreement expressly waives the
16  requirements of this article in clear and unambiguous terms. For
17  purposes of this subparagraph, "employee in the construction
18  industry" means an employee performing onsite work associated
19  with construction, including work involving alteration, demolition,
20  building, excavation, renovation, remodeling, maintenance,
21  improvement, repair work, and any other work as described by
22  Chapter 9 (commencing with Section 7000) of Division 3 of the
23  Business and Professions Code, and other similar or related
24  occupations or trades.
25   (b) "Family member" means any of the following:
26   (1) A child, which for purposes of this article means a biological,
27  adopted, or foster child, stepchild, legal ward, or a child to whom
28  the employee stands in loco parentis. This definition of a child is
29  applicable regardless of age or dependency status.
30   (2) A biological, adoptive, or foster parent, stepparent, or legal
31  guardian of an employee or the employee's spouse or registered
32  domestic partner, or a person who stood in loco parentis when the
33  employee was a minor child.
34   (3) A spouse.
35   (4) A registered domestic partner.
36   (5) A grandparent.
37   (6) A grandchild.
38   (7) A sibling.

1    (c) "Health care provider" has the same meaning as defined in
2 paragraph (6) of subdivision (c) of Section 12945.2 of the
3 Government Code.
4    (d) "Paid sick days" means time that is compensated at the same
5 wage as the employee normally earns during regular work hours
6 and is provided by an employer to an employee for the purposes
7 described in Section 246.5.
8    (e) "Small business" means an employer who employs 10 or
9 fewer employees during 20 or more calendar workweeks in the
10 current or preceding calendar year.
11    246.  (a)  An employee who works in California for seven or
12 more days in a calendar year is entitled to paid sick days as
13 specified in this section.
14    (b) (1)  An employee shall accrue paid sick days at the rate of
15 not less than one hour per every 30 hours worked, beginning at
16 the commencement of employment or the operative date of this
17 article, whichever is first.
18    (2)  An employee who is exempt from overtime requirements
19 as an administrative, executive, or professional employee under a
20 wage order of the Industrial Welfare Commission is deemed to
21 work 40 hours per workweek for the purposes of this section,
22 unless the employee's normal workweek is less than 40 hours, in
23 which case the employee will accrue paid sick days based upon
24 that normal workweek.
25    (c)  An employee shall be entitled to use accrued paid sick days
26 beginning on the 90th calendar day of employment, after which
27 day the employee may use paid sick days as they are accrued.
28    (d)  Accrued paid sick days shall carry over to the following
29 calendar year. However, an employer may limit an employee's
30 use of paid sick days to 24 hours or three days in each calendar
31 year.
32    (e)  An employer is not required to provide additional paid sick
33 days pursuant to this section if the employer has a paid leave policy
34 or paid time off policy and the employer makes available an
35 amount of leave that satisfies the accrual requirements of this
36 section and that may be used for the same purposes and under the
37 same conditions as specified in this section.
38    (f) (1)  Except as specified in paragraph (2), an employer is not
39 required to provide compensation to an employee for accrued,

1 unused paid sick days upon termination, resignation, retirement,
2 or other separation from employment.
3   (2) If an employee separates from an employer and is rehired
4 by the employer within one year, previously accrued and unused
5 paid sick days shall be reinstated. The employee shall be entitled
6 to use those previously accrued and unused paid sick days and to
7 accrue additional paid sick days upon rehiring.
8   (g) An employer may lend paid sick days to an employee in
9 advance of accrual, at the employer's discretion and with proper
10 documentation.
11   246.5. (a) Upon the oral or written request of an employee,
12 an employer shall provide paid sick days for the following
13 purposes:
14   (1) Diagnosis, care, or treatment of an existing health condition
15 of, or preventive care for, an employee or an employee's family
16 member.
17   (2) For an employee who is a victim of domestic violence or
18 sexual assault, the purposes described in subdivision (c) of Section
19 230 and subdivision (a) of Section 230.1.
20   (b) An employer shall not require as a condition of using paid
21 sick days that the employee search for or find a replacement worker
22 to cover the days during which the employee uses paid sick days.
23   (c) (1) An employer shall not deny an employee the right to
24 use sick days, discharge, threaten to discharge, demote, suspend,
25 or in any manner discriminate against an employee for using sick
26 days, attempting to exercise the right to use sick days, filing a
27 complaint with the department or in a court alleging a violation of
28 this article, cooperating in an investigation or prosecution of an
29 alleged violation of this article, or opposing any policy or practice
30 or act that is prohibited by this article.
31   (2) There shall be a rebuttable presumption of unlawful
32 retaliation if an employer denies an employee the right to use sick
33 days, discharges, threatens to discharge, demotes, suspends, or in
34 any manner discriminates against an employee within 90 days of
35 any of the following:
36   (A) The filing of a complaint by the employee with the Labor
37 Commissioner or in a court alleging a violation of this article.
38   (B) The cooperation of an employee with an investigation or
39 prosecution of an alleged violation of this article.

Exh. B

1  (C)  Opposition by the employee to a policy, practice, or act that
2  is prohibited by this article.
3  247.  (a)  An employer shall give each employee written notice
4  of the requirements of this article in English, Spanish, Chinese,
5  and any other language spoken by at least 5 percent of the
6  employees. The written notice shall state the following:
7  (1)  That an employee is entitled to accrue, request, and use paid
8  sick days.
9  (2)  The amount of paid sick days provided for by this article.
10  (3)  The terms of use of paid sick days.
11  (4)  That retaliation or discrimination against an employee who
12  requests paid sick days or uses paid sick days, or both, is prohibited
13  and that an employee has the right under this article to file a
14  complaint or bring a civil action against an employer who retaliates
15  or discriminates against the employee.
16  (b)  In each workplace of the employer, the employer shall
17  display a poster in a conspicuous place containing all the
18  information specified in subdivision (a). The Labor Commissioner
19  shall create a poster containing this information and make it
20  available to employers.
21  (c)  An employer who willfully violates the notice and posting
22  requirements of this section is subject to a civil penalty of not more
23  than one hundred dollars ($100) per each offense.
24  247.5.  An employer shall keep for at least five years records
25  documenting the hours worked and paid sick days accrued and
26  used by an employee. An employer shall allow the Labor
27  Commissioner access to these records with appropriate notice and
28  at a mutually agreeable time to monitor compliance with this
29  article. An employer shall make these records available to an
30  employee pursuant to Section 226. If an employer does not
31  maintain adequate records pursuant to this section, it shall be
32  presumed that the employee is entitled to the maximum number
33  of hours accruable under this article, unless the employer can show
34  otherwise by clear and convincing evidence.
35  248.  The Labor Commissioner is authorized and directed to
36  coordinate implementation and enforcement of this article and to
37  promulgate guidelines and regulations for those purposes.
38  248.5.  (a)  The Labor Commissioner is authorized and directed
39  to enforce this article, including investigating an alleged violation,
40  and ordering appropriate temporary relief to mitigate the violation

EXHIBIT B

**AB 1522** — 12 —

1 or to maintain the status quo pending the completion of a full
2 investigation or hearing.
3    (b) If the Labor Commissioner, after a hearing that contains
4 adequate safeguards to ensure that the parties are afforded due
5 process, determines that a violation of this article has occurred, he
6 or she may order any appropriate relief, including reinstatement,
7 backpay, the payment of sick days unlawfully withheld, and the
8 payment of an additional sum in the form of an administrative
9 penalty to an employee or other person whose rights under this
10 article were violated. If paid sick days were unlawfully withheld,
11 the dollar amount of paid sick days withheld from the employee
12 multiplied by three, or two hundred fifty dollars ($250), whichever
13 amount is greater, shall be included in the administrative penalty.
14 In addition, if a violation of this article results in other harm to the
15 employee or person, such as discharge from employment, or
16 otherwise results in a violation of the rights of the employee or
17 person, the administrative penalty shall include a sum of fifty
18 dollars ($50) for each day or portion thereof that the violation
19 occurred or continued.
20    (c) Where prompt compliance by an employer is not
21 forthcoming, the Labor Commissioner may take any appropriate
22 enforcement action to secure compliance, including the filing of
23 a civil action. In compensation to the state for the costs of
24 investigating and remedying the violation, the commissioner may
25 order the violating employer to pay to the state a sum of not more
26 than fifty dollars ($50) for each day or portion of a day a violation
27 occurs or continues for each employee or other person whose rights
28 under this article were violated. These funds shall be allocated to
29 the Labor Commissioner to offset the costs of implementing and
30 enforcing this article.
31    (d) An employee or other person may report to the Labor
32 Commissioner a suspected violation of this article. The
33 commissioner shall encourage reporting pursuant to this
34 subdivision by keeping confidential, to the maximum extent
35 permitted by applicable law, the name and other identifying
36 information of the employee or person reporting the violation.
37 However, the commissioner may disclose that person's name and
38 identifying information as necessary to enforce this article or for
39 other appropriate purposes, upon the authorization of that person.

Exh. B

1    (e) The Labor Commissioner, the Attorney General, a person
2 aggrieved by a violation of this article, or an entity a member of
3 which is aggrieved by a violation of this article may bring a civil
4 action in a court of competent jurisdiction against the employer
5 or other person violating this article and, upon prevailing, shall be
6 entitled to such legal or equitable relief as may be appropriate to
7 remedy the violation, including reinstatement, backpay, the
8 payment of sick days unlawfully withheld, the payment of an
9 additional sum as liquidated damages in the amount of fifty dollars
10 ($50) to each employee or person whose rights under this article
11 were violated for each day or portion thereof that the violation
12 occurred or continued, plus, if the employer has unlawfully
13 withheld paid sick days to an employee, the dollar amount of paid
14 sick days withheld from the employee multiplied by three; or two
15 hundred fifty dollars ($250), whichever amount is greater; and
16 reinstatement in employment or injunctive relief; and further shall
17 be awarded reasonable attorney's fees and costs, provided,
18 however, that any person or entity enforcing this article on behalf
19 of the public as provided for under applicable state law shall, upon
20 prevailing, be entitled only to equitable, injunctive, or restitutionary
21 relief, and reasonable attorney's fees and costs.
22    (f) In an administrative or civil action brought under this article,
23 the Labor Commissioner or court, as the case may be, shall award
24 interest on all amounts due and unpaid at the rate of interest
25 specified in subdivision (b) of Section 3289 of the Civil Code.
26    (g) The remedies, penalties, and procedures provided under this
27 article are cumulative.
28    249. (a) This article does not limit or affect any laws
29 guaranteeing the privacy of health information, or information
30 related to domestic violence or sexual assault, regarding an
31 employee or employee's family member. That information shall
32 be treated as confidential and shall not be disclosed to any person
33 except to the affected employee, or as required by law.
34    (b) This article shall not be construed to discourage or prohibit
35 an employer from the adoption or retention of a paid sick days
36 policy more generous than the one required herein.
37    (c) This article does not lessen the obligation of an employer to
38 comply with a contract, collective bargaining agreement,
39 employment benefit plan, or other agreement providing more
40 generous sick days to an employee than required herein.

EXHIBIT B

**AB 1522** — 14 —

1    (d) This article establishes minimum requirements pertaining
2  to paid sick days and does not preempt, limit, or otherwise affect
3  the applicability of any other law, regulation, requirement, policy,
4  or standard that provides for greater accrual or use by employees
5  of sick days, whether paid or unpaid, or that extends other
6  protections to an employee.
7    249.5.  (a)  A public authority established under Section 12301.6
8  of the Welfare and Institutions Code shall be required to meet the
9  requirements of this article for individuals who perform domestic
10 services comprising in-home supportive services under Article 7
11 (commencing with Section 12300) of Chapter 3 of Part 3 of
12 Division 9 of the Welfare and Institutions Code.
13   (b)  A public authority may satisfy the requirements of this article
14 by entering into a collective bargaining agreement that provides
15 an incremental hourly wage adjustment in an amount sufficient to
16 satisfy the accrual requirements of Section 246.

O